UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NATALIE ICE, | ) | CASE NO. 4:03CV2281 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | GEORGE J. LIMBERT |
| v. | ) | |
| | ) | |
| MARK DIXON, et al., | ) | |
| | ) | **MEMORANDUM OPINION & ORDER** |
| Defendants. | ) | |

The above case is before this Court on a motion for summary judgment filed by

Defendant Mahoning County and Defendant Randall Wellington (Defendant Wellington) in his

official and individual capacities.  ECF Dkt. #51.  Defendant Dixon has also filed a motion for

summary judgment on all claims against him in his official capacity.  ECF Dkt. #69.  Plaintiff has

filed a response in opposition to the motion for summary judgment and Defendants Mahoning

County, Wellington and Dixon have filed a reply.  ECF Dkt. #s 61, 67.

For the following reasons, this Court GRANTS Defendants Mahoning County, Wellington

and Dixon's motions for summary judgment.  ECF Dkt. #s 51, 69.

**A.     FACTS AND PROCEDURAL HISTORY**

On November 7, 2003, Plaintiff filed a complaint in this Court against Defendant Mahoning

County, Defendant Wellington, the duly elected Sheriff of Mahoning County, and Defendant Dixon,

a duly appointed sheriff's deputy with the Mahoning County Sheriff's Department at the time of the

incident .  ECF Dkt. #1.  Plaintiff sued Defendants Wellington and Dixon in both their official and

individual capacities.  *Id.*

1

In her complaint, Plaintiff avers that on or about November 11, 2002, she was incarcerated at the Mahoning County Jail in the Jail's medical pod for problems relating to Bi-polar Manic Depressive Disorder.  ECF DKt. #1 at 4.  Plaintiff alleges that "[u]pon information and belief, Defendant Dixon promised to arrange for Ice's release from the County Jail if she performed oral sex and other sex acts upon his person." *Id.*  She further alleges that while in the medical pod, Defendant Dixon unlawfully forced her to perform oral sex on him.  *Id.*

In the first count of her complaint, Plaintiff sues Defendant Dixon pursuant to 42 U.S.C § 1983, alleging that he acted intentionally or with deliberate indifference to her right to be free from physical and sexual abuse and her right to be free from illegal seizure of her person while in custody. ECF Dkt. #1 at 5.  In her second count, Plaintiff alleges violations of §1983 against Defendants Mahoning County and Wellington, averring that they acted intentionally or with deliberate indifference to violating her constitutional rights because they had a custom and/or policy of inadequately supervising and training their deputies, including Defendant Dixon, and thus failed to prevent or inadequately prevented constitutional violations by their deputies.  *Id.* at 6.  Plaintiff also avers counts of assault and battery under Ohio law against Defendant Dixon in her third and fourth counts.  *Id.* at 7-8.  Plaintiff's final count is captioned "Punitive Damages: All Defendants" and asserts that Defendants Dixon, Mahoning County and Wellington used and authorized the use of excessive and unreasonable force and offensive contact and sexual assault with evil motive, actual malice, deliberate violence or oppression which resulted in a willful and wanton disregard of Plaintiff's rights as Defendants Mahoning County and Wellington knew or should have known that Defendant Dixon had a propensity for committing and engaging in improper sexual conduct with female inmates.  *Id.* at 9.

Defendant Dixon filed his answer to the complaint on February 2, 2004.  ECF Dkt. #8. Defendants Mahoning County and Wellington answered the complaint on March 3, 2004.  ECF Dkt.

#10.  On February 7, 2005, Defendants Mahoning County and Wellington filed the instant motion

for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  ECF Dkt. #51.

On April 14, 2005, Plaintiff filed a brief in opposition to the motion for summary judgment and

Defendants Mahoning County and Wellington thereafter filed a reply.  ECF Dkt. #s 61, 67.  On May

26, 2005, Defendant Mark Dixon, in his official capacity, filed a motion for summary judgment.

ECF Dkt. #69.  Plaintiff did not file a response to this motion.

**B.**      **MOTION FOR SUMMARY JUDGMENT**

    **1.**      **STANDARD OF REVIEW**

In their motion for summary judgment, Defendants Mahoning County and Wellington assert

that there are no genuine issues of material fact to be litigated in this case and they are entitled to

judgment as a matter of law on all of Plaintiff's claims against them.  ECF Dkt. #51 at 9.  Defendants

Mahoning County and Wellington maintain that Plaintiff cannot show that her rights were violated

pursuant to a policy of the Mahoning County Sheriff's Department as they provided proper training

to all of their sheriff's deputies, including Defendant Dixon, and they acted exemplary both before

and after Plaintiff reported the instant alleged incident.  *Id.*  Defendant Wellington also asserts that

Plaintiff cannot establish that he knew of or disregarded any risk of attack from Defendant Dixon.

*Id.* at 11-13.  He further asserts that he is entitled to the same political subdivision immunity under

Ohio Revised Code §2744 as Defendant Mahoning County and he is otherwise protected by qualified

immunity against claims in his individual capacity.  *Id.* at 11-13.

Rule 56(c) of the Federal Rules of Civil Procedure governs summary judgment motions and

provides, in pertinent part:

        The judgment sought shall be rendered forthwith if the pleadings, depositions,
        answers to the interrogatories, and admissions on file, together with the affidavits, if

3

any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

FED. R. CIV. P. 56(C).  The party moving for summary judgment bears the initial burden of informing the Court of the basis for the motion and must identify the portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett* 477 U.S. 317, 323 (1986).  The moving party discharges this initial burden if it shows that the nonmoving party has failed to establish an essential element of the nonmoving party's case for which she bears the ultimate burden of proof at trial.  *Id.; Morales v. American Honda Motor Co., Inc.,* 71 F.3d 531, 535 (6th Cir. 1995).  The Court must view the evidence submitted in a light most favorable to the nonmoving party in order to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

If the moving party meets its burden on summary judgment, then the nonmoving party must take affirmative steps in order to avoid the entry of a summary judgment.  Fed.R.Civ.P. 56(e).  The nonmoving party must present additional evidence beyond the pleadings which shows by more than a scintilla of evidence support for her position. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986).  The Court must grant summary judgment unless sufficient evidence exists that favors the nonmoving party such that a judge or jury could reasonably return a verdict for that party. *Id.* at 249. The Court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.*  If a party fails to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," then the Court must enter summary judgment. *Celotex Corp*., 477 U.S. at 322.

4

**2.**    **CLAIMS AGAINST DEFENDANT MAHONING COUNTY AND DEFENDANTS WELLINGTON AND DIXON IN THEIR OFFICIAL CAPACITIES**

The Court shall address Plaintiff's claims against Defendant Mahoning County and Defendants Wellington and Dixon in their official capacity first. The undersigned notes that a §1983 suit against a local government official in his official capacity is the equivalent of a suit against the governmental entity. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir.1994). The Supreme Court has held that it is redundant to allege claims against both a municipality and against its officers in their official capacities, as the latter necessarily implicates the former. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Soper v. Hoben,* 195 F.3d 845, 853 (6th Cir. 1999). Plaintiff's lawsuit against Defendants Wellington and Dixon in their official capacities are therefore merely suits against Defendant Mahoning County. Accordingly, the Court will refer to Defendant Mahoning County as the entity in discussing the current claims which involve Defendant Mahoning County and Defendants Wellington and Dixon as sued in their official capacity. References to Defendant Wellington and Defendant Dixon will be made only when necessary.

A plaintiff may sue a municipality or county under §1983 for a constitutional violation. *Fox v. Van Oosterum*, 176 F.3d 342, 348 (6th Cir. 1999). A suit against a municipality is governed by a separate standard than a claim under §1983 against an official in his individual capacity, and municipalities may not assert qualified immunity as a defense to liability.[1] *Owen v. City of*

---

[1]  The Court notes that Plaintiff states in her response that Defendant Mahoning County and Defendant Wellington, in his official capacity, argue in support of their qualified immunity. ECF DKt. #61 at 7("The Defendant's[sic] Mahoning County and Sheriff Wellington maintain their defense on the premise that they are immune from liability under 42 U.S.C. §1983 under Qualified Immunity because they properly supervised, trained and instructed Defendant Dixon with regards to sexual contact with inmates and that their custom and policy advised against defendant Dixon's conduct."); and ECF Dkt. #61 at 11 ("Defendant's[sic] position that they are immune from liability based on qualified immunity for their policies against sexual contact with an  inmate, are not even germane to the issue at hand"). However,

*Independence*, 445 U.S. 622, 638 (1980).  Under this standard, a municipality cannot be found liable unless the plaintiff can establish that an officially executed policy, or the toleration of a custom within the municipality, leads to, causes, or results in the deprivation of a constitutionally protected right.  *Monell*, 436 U.S. at 690-91.  A municipal liability claim must be examined by applying a two-pronged inquiry:

> (1) Whether the plaintiff has asserted the deprivation of a constitutional right; and

> (2) Whether the municipality is responsible for that violation.

*Doe v. Claiborne County*, 103 F.3d 495, 505-506 (6th Cir.1996)(citing *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992)).  Thus, "[i]t is a separate inquiry to establish whether a constitutional violation occurred, and whether a municipality bears responsibility."  *Ford v. County of Oakland*, No. 00-2140, 35 Fed. Appx. 393, 2002 WL 987332 (6th Cir. May 13, 2002), unpublished, citing *Collins,* 503 U.S. at 121.

Plaintiff has satisfied the first element of her municipal liability claim as she raises a claim relating to her right to personal security and bodily integrity while in custody.  The law is settled that inmates and pretrial detainees have a clearly established fundamental substantive due process right "to personal security and to bodily integrity," extending specifically to the right to be free from sexual abuse.  *Doe,* 103 F.3d at 506.  Further, those held in custody by the state have a special relationship with the state which imposes upon the state a special duty of protection against the violation of that person's due process rights.  *L.W. v. Grubbs,* 974 F.2d 119, 121 (9th Cir.1992) (citing *Youngberg v. Romeo,* 457 U.S. 307, 314-25 (1982)).

---

Defendants Mahoning County and Wellington do not assert qualified immunity in their official capacities in any way in their motion for summary judgment and, as Plaintiff should know, qualified immunity protects government officials sued only in their individual capacities and is therefore not available to municipalities or those sued in their official capacities. *Anthony v. Vaccaro*, 43 F.Supp.2d 843, 845 (N.D. Ohio 1999), citing *Cagle v. Gilley*, 957 F.2d 1347, 1348 (6th Cir. 1992).

Defendant Mahoning County concedes that Plaintiff can establish sufficient evidence in order to raise a genuine issue of material fact to show that a constitutional violation occurred and that she had a right to be protected from harm while in custody.  ECF Dkt. #67 at 2.  However, in order to meet the second prong of establishing municipal liability, Plaintiff must set forth sufficient evidence to establish a genuine issue of material fact that Defendant Mahoning County is responsible for the constitutional violation of her right to personal security and/or bodily integrity.  While Plaintiff presents numerous claims in her complaint relating to an absence of policy, toleration of a custom of violating prisoner's constitutional rights, and claims of inadequate training, instruction and supervision, Plaintiff appears to concede that Defendant Mahoning County did indeed have policies and customs in place and provided adequate training to Defendant Dixon with regard to the prohibition against deputies having sexual contact with inmates.  In fact, Plaintiff states in her response that "[t]he question is not whether Defendant's[sic] adequately trained or provided customs and policies to deputy Dixon in order to make it clear that sexual assault, battery or contact with a female inmate was a "No No."  ECF Dkt. #61 at 11.  Rather, Plaintiff asserts that "[t]he issue is knowing of deputy Dixon's propensity for violence given the Easterly investigation, the Defendant's[sic] were 'deliberately indifferent' enough to provide adequate protection for the Plaintiff or any other inmate for that matter."  ECF Dkt. #61 at 11.

Plaintiff therefore apparently contends that Defendants Mahoning County and Wellington exercised deliberate indifference because they continued to allow Defendant Dixon to act as a floating deputy with unsupervised access to inmates even though they knew of his alleged violent propensities based upon the investigation into his role in the use of excessive and unreasonable force on Tawhon Easterly, a male inmate at the Mahoning County Jail.  ECF Dkt. #61 at 8.  In her response, Plaintiff relies solely on the theory that Defendant Mahoning County was deliberately

7

indifferent to her constitutional rights because Defendant Wellington knew of Defendant Dixon's propensity for violence at the time of the instant incident because they were aware that Defendant Dixon and other Mahoning County sheriff's deputies were under investigation for conspiring to and engaging in the deprivation of the constitutional rights of Tawhon Easterly through their use of excessive and unreasonable force against him.  ECF Dkt. #61 at 11-13.

Based upon her response to the motion for summary judgment, it therefore appears to the Court that Plaintiff has abandoned any claims relating to the existence of or inadequacy of policies, customs or training by Defendants Mahoning County and Wellington as to sheriff deputies having sexual contact with female inmates.  It appears that Plaintiff's only remaining official capacity claim is that Defendants Mahoning County and Wellington were deliberately indifferent to Plaintiff's constitutional rights to bodily security and integrity as they knew that Defendant Dixon was the subject of an investigation involving violence against a male inmate and they nevertheless allowed him to continue to act as a floating deputy with unsupervised access to female inmates.  ECF Dkt. #61 at 11-13.

However, despite the appearance to the Court that Plaintiff has waived her policy, custom and training claims, the Court nevertheless addresses these claims for purposes of clarification as Plaintiff's complaint and response present entirely different theories as to Plaintiff's §1983 claims against Defendants.  In her complaint, Plaintiff seems to focus on Defendant Wellington knowing of Defendant Dixon's propensity for inappropriate sexual behavior towards female inmates as she states that he knew of Defendant Dixon's propensity for such behavior but did not discipline Defendant Dixon, did nothing to protect the female inmates, and provided no training to Defendant Dixon.  ECF Dkt. #1.  But in her response to the motion for summary judgment, Plaintiff concentrates on the assertion that Defendant Wellington and Mahoning County knew that Defendant

8

Dixon had a propensity for violence as he was under investigation for the use of excessive and unreasonable force against a male inmate.  ECF Dkt. #61.  The Court will therefore address all of Plaintiff's claims.

In order to hold Defendant Mahoning County, and thus Defendants Wellington and Dixon in their official capacities, liable under §1983 for an unconstitutional policy or custom, Plaintiff must show that the municipal entity formally adopted or promulgated a policy allowing deputy sheriffs to engage in sexual assault or contact with female inmates or show that conduct relating to allowing sexual contact between inmates and sheriff deputies existed that reflected "practices of state officials so permanent and well settled as to constitute a 'custom or usage' with the force of law."  *Monell*, 436 U.S. at 691.  With regard to a claim of failure to adequately train, supervise, or discipline, Plaintiff must establish that  the failure to train, supervise or discipline was so deficient that it shows "deliberate indifference" towards inmates' constitutional rights.  *Oklahoma v. Brown*, 520 U.S. 397, 403-404 (1997), citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) and *Monell,* 436 U.S. at 694.  The "deliberate indifference" must also be "moving force" behind the constitutional violation.  *Brown*, 520 U.S. at 404; *Graham v. County of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004) (citations omitted).  In other words, Plaintiff must show that the failure to train, supervise or discipline actually caused the constitutional violation to occur.  *Harris*, 489 U.S. at 390. Or Plaintiff must show that the constitutional violation flowed from the decision of Defendant Dixon as a final policymaker or that Defendant Dixon was instructed to violate her constitutional rights by someone who is a final policymaker.  *Id.*

Further, it is well-established that a municipality may not be held liable on a respondeat superior or vicarious liability theory for the independent actions of its employees.  *Board of County Comm'rs of Bryan Cty. v. Brown,* 520 U.S. 397 (1997).  The "wrongful conduct of a single officer

9

without any policymaking authority [does] not establish municipal policy." *Collins*, 503 U.S. at 121 (citing *Oklahoma City v. Tuttle*, 471 U.S. 808 (1985)). Additionally, "decisions by subordinate employees (do) not necessarily reflect official policy." *Id.* at 121 (citing *St. Louis v. Praprotnik*, 485 U.S. 112 (1988)). An allegation "that a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation; the plaintiff will simply have shown that the employee acted culpably." *Brown*, 520 U.S. at 406 (1997). A finding of municipal liability pursuant to § 1983 cannot depend upon a mere probability that any officer will inflict any constitutional injury. *Id.* at 412. Rather, a finding of municipal liability "must depend on a finding that *this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff." *Id.* at 412 (emphasis in original). These stringent standards are "necessary to avoid de facto respondeat superior liability explicitly prohibited by *Monell*." *Doe*, 103 F.3d at 508.

Applying these standards, the undersigned turns to the burdens that each party must bear on summary judgment. Defendant Mahoning County points to the affidavit of Alki Santamas, the Jail Administrator for the Mahoning County Sheriff's Department, who is responsible for training corrections officers, managing daily operations at the Jail, and implementing and creating policies and procedures. ECF Dkt. #51, Attachment #2. Mr. Santamas attested that Defendant Dixon underwent extensive training through the Ohio Peace Officers Training Academy in both corrections and law enforcement and he also received in-service training as a deputy sheriff with Defendant Mahoning County. *Id.* at 2. Mr. Santamas further represented that it was and is the policy of the Mahoning County Sheriff's Department that deputy sheriffs are not to have sexual contact with inmates and Defendant Dixon underwent training with regard to the impropriety of sexual contact with inmates in November of 2001. *Id*. at 2-3. Mr. Santamas also attested that

10

each and every deputy at the Jail was advised that they were not to engage in sexual contact with any incarcerated individual due to the policies of the Jail and the Ohio Revised Code. *Id.* at 2. Defendants further point to Defendant Wellington's affidavit in which he represented that each and every deputy sheriff was administered an oath in which he swore to uphold the laws of the State of Ohio and the United States of America and each deputy sheriff was advised that sexual contact with an inmate was a criminal and ethical violation and an abridgment of the policies of the Mahoning County Sheriff's Department. ECF Dkt. #51, Exhibit #1 at 2. Defendants contend that these affidavits establish that they maintained a policy of prohibiting sexual contact with inmates by deputies, they had no custom of tolerating such behavior by deputies, and all deputies, including Defendant Dixon, were informed of and received training about the policy and its prohibitions. ECF Dkt. #51 at 10.

Defendants Mahoning County and Wellington also assert that they did not act with deliberate indifference to Plaintiff's allegations of sexual assault by Defendant Dixon. They rely on the affidavit of Defendant Wellington, who attests that within forty-eight hours of Plaintiff reporting the instant incident, the Mahoning County Sheriff's Department questioned Plaintiff in a videotaped interview, transported Plaintiff to the hospital where a rape kit was administered, contacted the Bureau of Criminal Investigation who dispatched experts to the scene of the incident, suspended Defendant Dixon from his position, initiated an Internal Affairs investigation into the matter, and contacted the Mahoning County Prosecutor's Office to investigate whether criminal charges should be brought against Defendant Dixon. Mr. Santamas and Defendant Wellington both attested that the allegations of sexual contact between Plaintiff and Defendant Dixon were the only allegations of sexual contact between an inmate and a sheriff's deputy of which they had knowledge during their tenures at the Mahoning County Jail. ECF Dkt. #51,

11

Exhibit #s 1, 2.

Based upon this evidence, Defendant Mahoning County has met its burden on summary judgment as it has established that a policy against sexual contact with inmates was in place and all sheriff deputies received training against having any sexual contact with any inmate. Defendant Mahoning County also establishes that it had no custom tolerating sexual contact between sheriff deputies and incarcerated individuals and Plaintiff's complaint was investigated within a reasonable time, her allegations were taken seriously, Defendant Dixon was disciplined immediately after the allegations arose and the Mahoning County Prosecutor's Office was contacted after the Internal Affairs investigation in order to determine whether criminal charges should be brought.

The burden on summary judgment therefore shifted to Plaintiff to present evidence beyond the pleadings in order to establish genuine issues of material fact as to the existence of a policy against sheriff deputies having sexual contact with or sexually assaulting inmates, the existence of a custom tolerating such behavior, the lack of or inadequacy of Defendants' training, instruction and supervision of their deputies on this issue, and/or that Defendant Dixon was a final policymaker or acted to violate her constitutional rights based upon the decision of a final policymaker.  The Court finds that Plaintiff has failed to meet this burden.  First, Plaintiff presents no evidence to rebut Defendants' demonstration that a policy against having sexual contact with or sexually assaulting inmates existed and deputies were informed of and trained on this policy.  Nor does Plaintiff present any evidence establishing that a custom existed of wilfully ignoring occurrences or reports of sexual contact with inmates or of concealing such matters, especially in light of the affidavits of both Defendant Wellington and Mr. Santamas, who attested that this was the first sexual contact incident that they were aware of since they had begun their

tenures at the Jail.

Moreover, Plaintiff presents insufficient evidence in order to establish that a genuine issue of material fact exists that Defendant Mahoning County was deliberately indifferent to her constitutional rights.  Plaintiff relies upon the fact that Defendant Dixon and other Mahoning County Sheriff's Deputies, including a second-in-command-officer, were investigated for and eventually criminally charged for conspiring to and engaging in depriving a male inmate of his constitutional rights as they used excessive and unreasonable force against him.  ECF Dkt. #61. Plaintiff alleges that the investigation into these charges occurred during the instant incident and she asserts that Defendants Mahoning County and Wellington were therefore deliberately indifferent to her constitutional rights because they knew that Defendant Dixon had a propensity for violence but they nevertheless allowed him to continue to act as a floating deputy to serve in unsupervised areas, including the medical pod in which she was sexually assaulted.  *Id.*  She further alleges that the excessive force incident was covered up by officials, including Defendant Wellington.  *Id*.  Plaintiff requests that the Court take judicial notice of the federal criminal cases against Defendant Dixon and the other sheriff deputies.

The Court notes that Plaintiff avers in her complaint that "it was common knowledge among the Sheriff department administration that the Defendant [Dixon] had a reputation for inappropriate statements and/or contact with female inmates of the Mahoning County Justice Center" and she alleges that "the Sheriff administration was aware of Defendant Dixon's propensity for inappropriate sexual behavior towards female inmates".  ECF Dkt. #1 at 4.  Yet Plaintiff fails to mention these averments in her response and she provides no evidence in her response to the motion for summary judgment to support these statements or to show that Defendants Mahoning County and Wellington knew of this alleged inappropriate behavior toward

13

female inmates.

The Court further notes that Plaintiff mentions nothing in her complaint about the investigation into the conspiracy and participation in the unreasonable and excessive use of force by Defendant Dixon or other sheriff deputies on Tawhon Easterly.  But in her response, Plaintiff's theory as to municipal liability appears to rest on the criminal excessive force case against Defendant Dixon involving Easterly and other deputies as Plaintiff asserts in her response that Defendants were deliberately indifferent to her constitutional right to protection and bodily security and integrity because they knew of an investigation into Defendant Dixon's use of excessive and unreasonable force against Tawhon Easterly, but still allowed him unsupervised access to inmates in the pods, including the medical pod where she was sexually assaulted.

The Court finds that Plaintiff's reliance on the excessive force case is insufficient to establish the existence of genuine issues of material fact relating to the deliberate indifference of Defendants to her constitutional rights.  It is true that Defendant Dixon signed a plea agreement approved by United States District Court Judge Lesley Wells on February 28, 2005 in which he entered guilty pleas to conspiring to and engaging in the deprivation of civil rights of Tawhon Easterly by using excessive and unreasonable force on Mr. Easterly in his capacity as a sheriff's deputy.  *See* ECF Dkt. #122 in Case Number 4:04CR381.  However, Plaintiff provides no evidence to show that the investigation of Defendant Dixon for the excessive use of force occurred within the timeframe of the instant incident and she provides no evidence to show that Defendants Mahoning County and Wellington knew of the investigation into the excessive force allegations at the time that Plaintiff's incident occurred. The case involving inmate Tawhon Easterly occurred on December 28, 2001 and Plaintiff's incident allegedly occurred on November 11, 2002.  ECF Dkt. #s 1, 122 in Case Number 4:04CR381; ECF Dkt. #1.  However, Plaintiff

14

provides no other timeline information except for stating in her response that Defendant Wellington was put on notice "as of September 2002" about the Easterly excessive use of force through a statement made by Deputy Kaschak to the Austintown Police.  ECF Dkt. #60 at 7. Plaintiff further states in her response that "Austintown authorities immediately noticed Sheriff Wellington of the beatings, only the Sheriff turned a blind eye which eventually lead to a federal investigation."  *Id*. at 8.  These statements are insufficient to show that the investigation into the use of excessive and unreasonable force was proceeding in September 2002 or that Defendants Mahoning County and Wellington were aware of an investigation proceeding against Defendant Dixon's use of force during September 2002.

Moreover, and even assuming that Plaintiff could show that Defendant Wellington knew of the investigation of Defendant Dixon's role in the Easterly case, the Court finds equally unavailing Plaintiff's assertion that knowledge of an investigation into Defendant Dixon's conspiracy to use and use of excessive force against a male inmate equates to a finding of knowledge and deliberate indifference by Defendants that Defendant Dixon presented a risk of sexual assault against female inmates.  Plaintiff presents no legal support for a finding that knowledge of an investigation into the possible use of excessive force against a male inmate suffices to establish knowledge and indifference to unknown risks of sexual assault or sexual contact with female inmates.  As previously stated, a finding of municipal liability "must depend on a finding that *this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff." Brown, 520 S.Ct. at 412.

Plaintiff does cite to *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) as support, but her reliance on this case is misplaced.  Plaintiff cites *Hope* for the proposition that she need not demonstrate that the excessive force against Tawhon Easterly was "fundamentally similar" or "materially

15

similar" to her sexual assault case in order to show that Defendant Dixon was predisposed to violence and should have been suspended or reprimanded before he committed the act that she alleges he committed on her.  However, in *Hope,* the Supreme Court merely elaborated on that which is required in order for a particular right to be "clearly established" in the context of qualified immunity.  Qualified immunity is inapplicable to Plaintiff's claims against Defendants Mahoning County and Wellington in his official capacity in this case.  Further, the Court in *Hope* explained that in order for a right to be clearly established for qualified immunity purposes, the very action in question need not have been previously held unlawful and new factual circumstances may still be clearly established.  *Id.* While the Court in *Hope* did state that a plaintiff need not demonstrate the existence of a "fundamentally similar" or "materially similar" case as "[T]he salient question is whether the state of the law [at the time of the state action] gave respondents fair warning that their alleged treatment of [the plaintiff] was unconstitutional", Plaintiff fails to explain how this holding applies in the instant case outside of the qualified immunity context.

Furthermore, various courts have found that causation and culpability of municipal entities are lacking based merely upon an absence of specific training or deficient training of jailers not to sexually assault inmates as "the proper course of conduct–refraining from sexual assault and rape–is patent and obvious; structured training programs are not required to instill it. Consequently, the absence of such programs (even if such absence was proven) is not so likely to cause improper conduct so as to justify a finding of liability."  *Oliver v. City of Berkley*, 261 F.Supp.2d 870, 885 (E.D. Mich 2003), quoting *Williams v. Board of County Comm'rs of Wyandotte County/Kansas City*, No. 98-2485-JTM, 2000 WL 1375267 (D. Kan. Aug. 30, 2000). *See also Barney v. Pulsipher*, 143 F.3d 1299, 1308 (10th Cir. 1998)("we are not persuaded that a

16

plainly obvious consequence of a deficient training program would be the sexual assault of inmates.  Specific or extensive training hardly seems necessary for a jailer to know that sexually assaulting inmates is inappropriate behavior.").

Finally, Plaintiff fails to show that Defendant Dixon was a final policymaker or acted at the direction of a final policymaker in order to establish municipal liability in this case.

For these reasons, the Court GRANTS summary judgment in favor of Defendant Mahoning County and Defendants Wellington and Dixon in their official capacity as to Plaintiff's claims of an absence of or inadequacy of policy, custom, training, instruction, supervision, and discipline.

In an abundance of caution, Defendant Wellington also moves for summary judgment on what he perceives is a separate failure to protect claim asserted by Plaintiff in her complaint. Both parties address this claim as a separate claim and appear to rely upon their versions of what occurred after the alleged sexual assault of Plaintiff by Defendant Dixon as support for their respective positions.  Defendant Wellington moves for summary judgment on this claim, asserting that Plaintiff cannot establish that he failed to protect her from the alleged attack by Defendant Dixon because she cannot show that Defendant Wellington knew of the risk to her or knew of the risk and disregarded any risk to her by Defendant Dixon.  ECF Dkt. #51 at 11. Defendant Wellington relies upon the reasons asserted in moving for summary judgment on the claims discussed above relating to absence of or insufficient instruction, policy, custom and training, as well as deliberate indifference. *Id.* Defendant Wellington also relies upon his affidavit in which he stated that within forty-eight hours of Plaintiff's allegation that Defendant Dixon sexually assaulted her, the Sheriff's Department questioned Plaintiff, took her to the hospital where a rape kit was administered, contacted BCI to preserve evidence of the assault,

17

suspended Defendant Dixon from his position, reported the allegation to Internal Affairs for an investigation, and contacted the Mahoning County Prosecutor's Office regarding filing criminal charges against Defendant Dixon.  ECF Dkt. #51, Attachment #1 at 2.  Plaintiff, on the other hand, points to her own deposition testimony in order to establish that she endured more harassment and humiliation after the incident as she relates that officials other than Defendant Wellington attempted to force her to change her story and tried to cover up the incident.  ECF Dkt. #61.  Plaintiff contends that the affidavit of Defendant Wellington is false in that an investigation did not ensue immediately after she voluntarily came forward twenty-four hours after her report as Plaintiff alleges that she was not permitted to file a report until after twenty-four hours had elapsed and then the investigation did not occur until forty-eight hours afterwards when she was permitted to speak to a supervisor.  *Id.*

To the extent that Plaintiff alleges a separate claim of failure to protect that this Court has not already covered in the lengthy preceding analysis, the Court GRANTS Defendants' motion for summary judgment on this separate claim.  In order for Plaintiff to establish liability for an Eighth Amendment claim based upon Defendant Wellington's failure to prevent harm to her as a prisoner, she must show that he acted with "deliberate indifference" to a substantial risk that Defendant Dixon would cause serious harm.  *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001).  Prison officials such as Defendant Wellington can be held liable for exposing prisoners to the excessive force of other prison employees if Plaintiff can establish the same "deliberate indifference" standard under *Farmer v. Brennan* that subjects prison officials to liability when they fail to protect inmates from violence by others.  Thus, Plaintiff must show the objective component of deliberate indifference by establishing that she suffered a sufficiently serious deprivation of her constitutional rights and she must meet the subjective component of deliberate

18

indifference by establishing that Defendant Wellington had a sufficiently culpable state of mind.
*Id.*

Plaintiff has raised genuine issues of material fact as to the objective component as a sheriff deputy forcing an inmate to have oral sex is a sufficiently serious deprivation.  However, in order to establish the subjective component, Plaintiff must show that Defendant Wellington had a sufficiently culpable state of mind; that is, that he knew of and disregarded an excessive risk to her safety; he must have both been aware of facts from which he could draw the inference that a substantial risk of serious harm existed and he must have in fact drawn that inference. *Curry*, 249 F.3d at 506, quoting *Farmer*, 511 U.S. at 837.  As discussed at length in the preceding analysis, Plaintiff provides no evidence that raises genuine issues of material fact that Defendant Wellington knew of facts in which he could draw the inference that Defendant Dixon presented a substantial risk of harm to female inmates or that he drew that inference.  Plaintiff fails to raise a genuine issue of material fact that the investigation of Defendant Dixon into the Easterly excessive force case was occurring during the time period that she asserted and she fails to show that Defendant Wellington was aware of such an investigation.  Further, Plaintiff fails to show or provide legal support for a finding that Defendant Wellington should have known that a substantial risk of harm in the form of sexual assault existed to female inmates by virtue of an investigation of Defendant Dixon into the use of excessive force against a male inmate. Moreover, in response to the motion for summary judgment on this issue, Plaintiff merely discusses the way that other officials treated her when she reported the incident.  She does not discuss any facts relating to Defendant Wellington.  Plaintiff's only connection of these events to Defendant Wellington is that he was the supervisor of these officials.  Respondeat superior alone is insufficient to establish the liability of Defendant Wellington for Defendant Dixon's acts.

19

*Brown,* 520 U.S. 397.

For these reasons, the Court GRANTS Defendant Wellington's motion for summary judgment on Plaintiff's claim that he failed to prevent Defendant Dixon from harming her.

### **3.** **STATE LAW CLAIMS AGAINST DEFENDANT MAHONING COUNTY AND DEFENDANT WELLINGTON IN HIS OFFICIAL CAPACITY**

Defendant Mahoning County also moves for summary judgment on Plaintiff's state law claims against Mahoning County through Plaintiff's claims against Defendant Wellington in his official capacity. ECF Dkt. #51 at 12. Defendant Mahoning County concludes that Plaintiff has asserted state law claims against it through her claim for punitive damages against all Defendants. Defendant Mahoning County contends that Plaintiff's claims for punitive damages against it must fail because Ohio Revised Code §311.05 bars Defendant Wellington's liability as Sheriff for the acts of his deputies unless he was actually involved in the particular events in the case. *Id.* Defendant Wellington asserts that Plaintiff cannot show that he was involved in any of the events in her case. *Id.* Defendant Wellington further argues that he is immune from liability against state law claims in his official capacity based upon Ohio Revised Code §2744 as Plaintiff cannot establish that one of the five exceptions to immunity exist in this case in order to pierce the immunity. *Id.*

Plaintiff responds by again pointing out that Defendant Wellington "was put on notice as of September 2002 of the Easterly beatings" and nevertheless allowed Defendant Dixon to serve as a floating deputy with unsupervised access to all inmates, including Plaintiff, which allowed him to sexually assault her. ECF Dkt. #61. Plaintiff further discusses qualified immunity and asserts that she has met her reciprocal burden on summary judgment as to this claim because "[a] federal investigation into a cover up by one defendant of the violent acts of other defendants

20

looks like a whole lot more than a mere scintilla especially when the defendants are law enforcement officers and the one covering up the acts is the second in command, Major Mike Budd, to the sheriff, Randal[sic] Wellington."  ECF Dkt. #61.

The Court GRANTS summary judgment to Defendant Mahoning County on Plaintiff's claims for punitive damages against them, to the extent that she makes such claims.  First, the Court has found that Plaintiff's claims against Defendant Mahoning County and Defendants Wellington and Dixon, in their official capacity, are without merit.  Thus, Plaintiff's claim for punitive damages against these Defendants must also fail.  Further, Ohio Revised Code §2744.05(A) prohibits the award of punitive damages against a political subdivision and Plaintiff provides no evidence to warrant a finding that one of the five exceptions under Ohio Revised Code §2744.02(B) applies to excuse this political subdivision immunity.

### 4.  DEFENDANT WELLINGTON IN HIS INDIVIDUAL CAPACITY

Finally, Defendant Wellington moves for summary judgment on the basis of qualified immunity as to the counts filed against him in his individual capacity.  ECF Dkt. #51 at 13.   The doctrine of qualified immunity protects government officials performing discretionary functions from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  When officials are sued in their individual capacities, they may be protected from liability from damages if the alleged wrongful conduct was committed while they performed a function protected by qualified immunity.  *Anthony v. Vaccaro*, 43 F.Supp.2d 843, 845 (N.D. Ohio 1999), citing *Cagle v. Gilley*, 957 F.2d 1347, 1348 (6th Cir. 1992).In *Champion v. Outlook Nashville, Inc.*, the Sixth Circuit Court of Appeals set forth the three-part test for determining whether qualified immunity applies:

21

*First*, we determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred.  *Second*, we consider whether the violation involved a clearly

established constitutional right of which a reasonable person would have known.  *Third,* we determine whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.

380 F.3d 893, 900-901 (2004), quoting *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003).  If all three of these questions are answered in the affirmative, the Court should not grant qualified immunity.  *Id.* at 901.

As found above, Plaintiff has raised genuine issues of material fact as to the first and second prongs of the qualified immunity test in suffering a sufficiently serious deprivation as she has a clearly established constitutional right to be secure from sexual assault or sexual contact by prison officials while in prison.  *Farmer*, 511 U.S. at 842-843.  However, Plaintiff must also overcome the third prong set forth in *Champion* by showing that Defendant Wellington acted with "deliberate indifference" in failing to protect her.  *Id.* at 834.  A prison official acts with deliberate indifference when he knows that an inmate faces a substantial risk of serious harm and the official disregards that risk by failing to take reasonable measures to abate it.  *Id.* at 837.

Again, as she did with the claims against Defendant Mahoning County and Defendant Wellington in his official capacity, Plaintiff relies upon the theory that Defendant Wellington was deliberately indifferent to her constitutional rights because he knew that Defendant Dixon was under investigation for using excessive and unreasonable force against Tawhon Easterly during the time that he allowed Defendant Dixon to serve as a floating deputy which allowed Defendant Dixon  unsupervised access to inmates, including access to her in the medical pod.  However, again, Plaintiff provides no support to show that the investigation of Defendant Dixon for the use

22

of excessive and unreasonable force against Mr. Easterly occurred within the timeframe of the instant incident and she fails to establish genuine issues of material fact that Defendant Wellington knew of the investigation into the excessive force allegations at the time that her incident occurred.  Moreover, Plaintiff provides no legal support finding that an investigation into an officer's use of excessive and unreasonable force against a male inmate can constitute knowledge and indifference to unknown risks of sexual contact or sexual assault to female inmates.

Further, in order to hold Defendant Wellington liable under 42 U.S.C. §1983 in his individual capacity as a supervisor, Plaintiff must show that Defendant Wellington himself either encouraged or participated in the specific incident of misconduct or show that he"at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct."  ECF Dkt. #13 at 9-10, quoting *Shehee v. Luttrell*, 199 F.3d 295 (6th Cir. 1999), quoting *Hays v. Jefferson County, Kentucky*, 688 F.2d 869, 874 (6th Cir. 1992).  Plaintiff fails to demonstrate any genuine issue of material fact as to such liability.  "The individual liability of officials under section 1983 must be based on their own unconstitutional behavior-not merely the right to control the actions of employees or the failure to act."  *Davis v. Fentress County Tennessee,* 6 Fed.Appx. 243, 250-251, No. 99-6320, 2001 WL 223625 at **5 (6th Cir. Mar. 2, 2001), citing *Leach v. Shelby County Sheriff,* 891 F.2d 1241, 1246 (6th Cir.1990).

For these reasons, the Court finds that Plaintiff has failed to meet her reciprocal burden on summary judgment of showing that Defendant Wellington specifically encouraged, participated in or implicitly approved, authorized or knowingly acquiesced to a constitutional violation known to him.  The Court therefore GRANTS Defendant Wellington's motion for summary judgment on the basis of qualified immunity from suit in his individual capacity.

**C.** **CONCLUSION**

For the above reasons, the Court GRANTS the motion for summary judgment filed by Defendants Mahoning County and Defendant Wellington, in his official and individual capacities and therefore these parties are dismissed from the instant case with prejudice. ECF Dkt. #51. In addition, and by virtue of the Court's dismissal of all claims against Defendant Mahoning County, the Court also GRANTS Defendants Mahoning County and Wellington's amended motion for summary judgment on all claims against Defendant Dixon in his official capacity. ECF Dkt. #69. The Court therefore dismisses with prejudice all of Plaintiff's claims against Defendant Dixon in his official capacity. The only remaining claims in this case are those relating to Plaintiff's Count 1 §1983 claims against Defendant Dixon in his individual capacity and Plaintiff's Count III and IV claims of assault and battery against Defendant Dixon.


July 6, 2005                                      _/s/George J. Limbert_____
Date                                             GEORGE J. LIMBERT
                                                 U.S. MAGISTRATE JUDGE

24